Hans R. PETERSON, Petitioner,
Appellant,

v.

STATE of Minnesota, Respondent.

No. 49657.

Supreme Court of Minnesota.

July 20, 1979.

C. Paul Jones, Public Defender, and Michael F. Cromett, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen. and Gary Hansen, Special Asst. Atty. Gen., St. Paul, John F. Corbey, County Atty., Mankato, for respondent.

Heard before KELLY, TODD, and YETKA, JJ., and considered and decided by the court en banc.

TODD, Justice.

Complainant had been drinking at various bars in Mankato, Minnesota. In the late evening, she met Hans R. Peterson. The couple continued drinking and complainant made provocative statements in public on at least two occasions. She left with Peterson, who drove her into the countryside and forced her to commit fellatio and masturbation. He physically mistreated her. The trial court, without objection, did not define to the jury the term "great bodily harm," which related to an element of the crime. The jury found Peterson guilty of criminal sexual conduct in the first degree. In a postconviction proceeding, Peterson attacked the sufficiency of evidence, the instructions of the trial court, and the competency of his defense counsel. We affirm.

Complainant, a 42-year-old woman, commenced drinking liquor in Mankato at approximately 2 o'clock in the afternoon of November 5, 1976. She continued drinking with friends until the early evening when they all had dinner. Complainant's friends went home, but she remained in downtown Mankato and continued drinking. At some time between 10 and 11 p. m., she met Peterson who sat with her at the bar. The bartender on duty testified that as he cleaned up a spilled drink, complainant, in the presence of Peterson, told him that he had another drunk on his hands but that he did not have to worry unless she tried to seduce him. At about 11:30 p. m., Peterson and complainant went to another bar. Complainant had another drink. Complainant, again in the presence of Peterson, asked the bartender if he wanted to go to her place and "knock off a piece."

About 1 a. m., Peterson told complainant he would drive her home. When Peterson made a wrong turn, complainant tried to get out of the car. Peterson grabbed her neck and pushed her onto the front seat. Holding her down by the neck, he then drove her out into a rural area.

Peterson told her to give him a "blow job." She refused. He became angry, slapped her, choked her, and told her that if she did not do what he wanted, her children would find her lying out in the country naked. He then took off her clothes and made her put her mouth on his penis. He also held her mouth open and removed her false teeth. While in the car, Peterson urinated in complainant's mouth and ordered her to swallow the urine. She refused. Complainant then started screaming, so Peterson told her that he would take her someplace where no person would hear her.

He drove her to another location, again using force to retain her on the seat of the car. He stopped the car, dragged her out, urinated on her face and body, and then took her back into the car. He again forced her to have oral sex and masturbate him.

Peterson subsequently drove complainant home. Complainant called her son and he

came over. The son testified that she had red marks on her neck. The police were called and talked to complainant. She later gave the police a statement. She also entered the hospital at the suggestion of a doctor because she was on the verge of a nervous breakdown. She stayed in the hospital one week.

Based on this evidence, the jury returned a verdict of guilty of criminal sexual conduct in the first degree under Minn.St. 609.-342(c). Subsequently a postconviction proceeding was conducted. The principal thrust of the postconviction proceeding was an attack on the competency of defense counsel. In addition, the sufficiency of the evidence and the court's failure to define "great bodily harm" were attacked. The postconviction court denied relief, and Peterson appeals.

The issues presented are:

(1) Is the evidence sufficient to support the jury's finding, as an element of the crime, that complainant had a "reasonable fear of imminent great bodily harm"?

(2) Did the trial court err in not instructing the jury as to the definition of "great bodily harm"?

(3) Was defendant denied his Sixth Amendment right to effective assistance of counsel?

1. Peterson argues that the evidence was insufficient as a matter of law to support the jury finding, as an element of the crime, that complainant had a "reasonable fear of imminent great bodily harm." [1] The statute defines "great bodily harm" in Minn.St. 609.02, subd. 8, as follows:

" 'Great bodily harm' means bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm."

Thus, the question becomes whether there is sufficient evidence which would support the finding that the complainant had a reasonable and imminent fear that she would either be killed, sustain serious and permanent disfigurement, sustain serious and protracted impairment of a bodily member or organ, or sustain other serious bodily harm.

This court will not overturn the jury's verdict if, based on the evidence in the record, a jury could reasonably find appellant guilty of the offense, State v. Taylor, 258 N.W.2d 615, 622 (Minn.1977), with the evidence viewed most favorably to the verdict, State v. Strimling, 265 N.W.2d 423, 428 (Minn.1978). The evidence indicates numerous occasions when Peterson slapped, choked, and hit the complainant. He also grabbed her by the neck and held her face on the seat of the car. When she screamed, he took her to another location where people could not hear the screams.

In addition to this physical abuse, Peterson threatened complainant when she initially refused to cooperate. Complainant testified:

"He told me I was going to do whatever he told me to do or my kids were going to end up finding me laying out there naked * * *."

The jury could also consider the degrading acts which Peterson committed against complainant, particularly his act of urinating on her body and into her mouth. Such degrading conduct indicates that he totally lacked a concern for complainant.

\* \* \* \* \* \*

"(c) Circumstances existing at the time of the act cause the complainant to have a reasonable fear of imminent great bodily harm to the complainant or another * * *."

---

1. Criminal sexual conduct in the first degree under Minn.St. 609.342(c) is defined as follows: "A person is guilty of criminal sexual conduct in the first degree and may be sentenced to imprisonment for not more than 20 years, if he engages in sexual penetration with another person and if any of the following circumstances exist:

■ This evidence supports the finding by the jury that complainant was in a situation where the physical abuse, threats, and degrading conduct gave a reasonable fear of imminent death or serious bodily harm. Thus, the finding of reasonable fear of imminent great bodily harm should not be overturned.

2. Peterson contends that the trial court judge erred by not instructing the jury on the definition of "great bodily harm," contained in § 609.02, subd. 8. The trial court's instruction on criminal sexual conduct in the first degree was as follows:

" * * * To find the defendant guilty of this charge you must find that the State has proven beyond a reasonable doubt, one, that he engaged in sexual penetration with [complainant], as I will explain that term to you in a moment; and, two, that circumstances existed at the time of the act which caused [complainant] to have a reasonable fear of imminent great bodily harm to her. Now, by sexual penetration is not only meant sexual intercourse, but also what is called fellatio under the law which involves the male sexual organ in the mouth or sodomy as it has been termed here."

Defense counsel made no objection to the instruction nor requested that "great bodily harm" be defined in the instruction. Peterson challenges the instruction for the first time during the proceedings for postconviction relief.

■ Where no objection is made to the jury instruction, the alleged error in the instructions must be one of fundamental law or controlling principle, and it must substantially and materially prejudice the defendant's rights. *State v. Hembd*, 305 Minn. 120, 232 N.W.2d 872 (1975); *State v. Keaton*, 258 Minn. 359, 104 N.W.2d 650

(1960). The trial court did not incorrectly state the law. Instead, it correctly stated the elements without giving a detailed definition or explanation of the elements. Under such circumstances, it cannot be said that the instructions contained an error of fundamental law or controlling principle.

■ Moreover, this court has indicated that the elements of the crime should be explained,[2] but detailed definitions of the elements to the crime need not be given in the jury instructions if the instructions do not mislead the jury or allow it to speculate over the meaning of the elements. In *State v. Weis*, 186 Minn. 342, 344, 243 N.W. 135, 136 (1932), this court said:

" * * * The general charge adequately covered every element of the crime all of which had to be proved beyond a reasonable doubt. A defendant in a criminal case is not entitled to a complete separate charge as to each element of the crime as defined by the statute. When the court in the general instructions covers the crime charged as here, it should not ordinarily, upon request of a defendant or otherwise, make a separate charge as to single or individual elements of the crime as here requested. Such a procedure would tend toward confusion and unduly emphasize some elements. There may be special cases where this may appear advisable and proper, but not in this one."

■ Similarly, in the present case the failure to define "great bodily harm" in the jury instructions was not error. No issue was raised concerning the precise character of the actual or threatened injury, and therefore the commonly understood meaning of "great bodily harm" was sufficient to convey the essentials of the element to the jury.[3] Particularly this is so because the statutory definition of "great bodily harm"

---

2. The trial court should explain the elements of the offense rather than just read the statute. *State v. Carlson*, 268 N.W.2d 553, 561 (Minn. 1978); *State v. Thurston*, 299 Minn. 30, 35, 216 N.W.2d 267, 270 (1970).

3. At least two courts have addressed the issue of whether, in the context of a criminal prosecution, the element of "serious bodily harm" must be defined in the jury instructions. The courts have held that the element usually need

includes not only the specific harm of death, disfigurement, and impairment of bodily function, but also "other serious bodily harm" in general.

In conclusion, the trial court's failure to instruct on the definition of "great bodily harm" was not erroneous or prejudicial.

■ 3. Peterson challenges the competency of his defense counsel. We have reviewed the record and find this claim to be without merit. The various challenges to specific acts of alleged incompetency deal more with questions of trial strategy rather than erroneous legal decisions. The conduct of defense counsel in this case meets the standards we have established in *White v. State*, 309 Minn. 476, 480, 248 N.W.2d 281, 285 (1976). See, also, Nordby, *The Craft of The Criminal Appeal*, 4 Wm. Mitchell L.Rev. 1, 30.

Affirmed.

SHERAN, C. J., took no part in the consideration or decision of this case.

not be defined because the commonly understood meaning of the term is sufficient unless a specific requirement in the statutory definition is alleged to be unsatisfied. See, *Bowman v. State*, 504 S.W.2d 880 (Tex.Cr.App.1974); *State v. Perry*, 5 Ariz.App. 315, 426 P.2d 415 (1967). See, also, *Andrason v. Sheriff, Washoe County*, 88 Nev. 589, 503 P.2d 15 (1972).