**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-0358**

State of Minnesota,
Respondent,

vs.

Brian Kenneth Moore,
Appellant.

**Filed May 11, 2015**
**Affirmed**
**Johnson, Judge**

Sherburne County District Court
File No. 71-CR-11-1862

Lori Swanson, Attorney General, Matthew Frank, Assistant Attorney General, St. Paul, Minnesota; and

Kathleen A. Heaney, Sherburne County Attorney, Leah G. Emmans, Assistant County Attorney, Elk River, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Halbrooks, Judge; and Larkin, Judge.

**S Y L L A B U S**

A district court must instruct the jury on the statutory definition of "force" in Minnesota Statutes section 609.341, subdivision 3, if a defendant is charged with third-degree criminal sexual conduct in violation of Minnesota Statutes section 609.344, subdivision 1(c), which requires evidence that the defendant used "force or coercion to

accomplish [sexual] penetration," and if the state seeks to prove that the defendant used force to accomplish the penetration.

## O P I N I O N

**JOHNSON**, Judge

Brian Kenneth Moore was charged with third-degree criminal sexual conduct in violation of section 609.344, subdivision 1(c), of the Minnesota Statutes. That particular form of third-degree criminal sexual conduct requires proof that a defendant used "force or coercion to accomplish [sexual] penetration." In this case, the state sought to persuade the jury that Moore used force, but not coercion, to accomplish sexual penetration. A Sherburne County jury returned a verdict of guilty.

On appeal, Moore's primary argument is that the district court erred by not instructing the jury on the statutory definition of the word "force," which he contends is different from the common understanding of the word. Moore makes the argument for the first time on appeal because he did not object to the district court's instruction on that ground. We conclude that the district court erred because the jury instruction stating the elements of the charged offense did not include the legislature's definition of "force," which is meaningfully different from the lay definition. We conclude, however, that the district court's error is not plain and, furthermore, did not affect Moore's substantial rights. We also conclude that the district court did not err in excluding certain evidence that Moore sought to introduce. Therefore, we affirm the conviction.

# FACTS

Moore was convicted of committing criminal sexual conduct against a woman, P.B., with whom he previously had had a consensual sexual relationship. That relationship began in another state in 2004, when P.B. was married to another man. Both Moore and P.B. later moved to different states, but they maintained contact and occasionally met and engaged in consensual sexual conduct. On a few of those occasions, according to P.B.'s trial testimony, they engaged in "rough sex" and in sexual conduct that she described as domination and submission. Certain sexual episodes also involved the infliction of physical pain through slapping and hair pulling. This sexual relationship continued until 2009. Moore and P.B. saw each other in December 2010, when Moore was living in Minnesota and P.B. was visiting relatives in the state. They met at a mall in St. Cloud, accompanied by P.B.'s daughter, but did not engage in sexual conduct.

Moore and P.B. saw each other again the following year. Moore was in a sexual relationship with and living with another woman, A.W. P.B. was living in the eastern United States, was engaged to be married to another man, and was 26 weeks pregnant. In July 2011, P.B. was required to be in Minnesota for a court hearing concerning the custody of two children from her prior marriage. Before her trip, she contacted Moore by instant message and text message and asked for assistance with transportation and other matters. In one text message to P.B., Moore wrote that he was looking forward to having sex with her, and P.B. responded that she did not want to have sex with him because she was committed to her fiancé. Moore and P.B. later exchanged additional text messages

3

that were sexually suggestive. In one text message, P.B. wrote: "stop tempting me. It is hard enough." In another text message, P.B. wrote: "I want to but my heart and conscience are telling me no. I know that I will tell [my fiancé]. I can't risk losing him."

P.B. arrived in Minnesota on July 5, 2011. Moore picked her up at the airport, drove her to a hotel in the city of Elk River, and helped her check in. They spent time together the next day, along with P.B.'s two children and A.W. and her child. Moore also ran errands for P.B. In the late afternoon, P.B. went back to her hotel room, while Moore and A.W. went to a bar to play volleyball with friends. At approximately 7:00 p.m., P.B. sent a text message to Moore, asking, "If it's not too late, will you stop by?" P.B. later testified that she wanted to ask Moore whether she could stay at the home he shared with A.W. on the following night, P.B.'s last night in Minnesota, in which case she would check out of her hotel in the morning. Moore responded by writing that he would stop by the hotel later that night. He and A.W. spent the evening with friends at two bars. At approximately 11:30 p.m., P.B. sent another text message to Moore, saying, "come see me if you can," and "I need to talk to you."

Moore and A.W. went to P.B.'s hotel at approximately 1:30 a.m. A.W. waited in the car while Moore went inside the hotel. Moore entered P.B.'s hotel room with an extra key card that she had given him earlier, when he ran errands for her. P.B. was sleeping but awoke to a "sharp pain" in her breast and realized that Moore was on top of her and was biting her breast. She tried to sit up but could not do so because Moore was holding her arms down with his hands and was pressing one of his legs against her stomach. Moore then rubbed and licked one of P.B.'s thighs. She was "astonished" and

4

told him "no" repeatedly while crying. Moore pushed her onto her stomach. She pulled her legs underneath her to protect her pregnant belly. When P.B. cried into her pillow, Moore pulled her head up by her hair and told her that it was merely a dream. Moore penetrated her vagina with his penis for a couple of minutes until he ejaculated. P.B. experienced pain while Moore was penetrating her. A.W. testified at trial that Moore returned to the car after approximately ten minutes, and her testimony on that point was corroborated by hotel surveillance cameras.

After Moore left the hotel room, P.B. called her fiancé and told him that Moore had raped her. Her fiancé said that she should call the police, and they agreed that he would do so. Police officers came to P.B.'s hotel room shortly thereafter to take her statement and gather evidence. P.B. was transported by ambulance to a hospital, where a nurse performed a sexual-assault examination. The nurse observed five small lacerations on the walls of P.B.'s vagina that are consistent with a sexual assault. Meanwhile, police officers brought Moore and A.W. to the police station for questioning. Moore initially said that he had only kissed P.B. On further questioning, he said that they had had consensual sex.

In December 2011, the state charged Moore with third-degree criminal sexual conduct, in violation of Minn. Stat. § 609.344, subd. 1(c) (2010). The case was tried over two days in October 2013. The state called five witnesses: P.B., the nurse who performed the sexual-assault exam, two Elk River police officers, and A.W. The defense called one witness: a former employee of the hotel who also was Moore's neighbor. The jury found Moore guilty. The district court imposed a sentence of 48 months of

5

imprisonment but stayed execution of the sentence, ordered jail time with credit for time in detention, and placed Moore on probation for 15 years. The district court's sentence is a downward dispositional departure from the presumptive guidelines sentence of 41 to 58 months of imprisonment. Moore appeals.

## ISSUES

I.      Did the district court err by excluding evidence of P.B.'s mental-health diagnosis?

II.      Is Moore entitled to a new trial because the district court did not instruct the jury on the statutory definition of the word "force," as used in the third-degree criminal-sexual-conduct statute?

## ANALYSIS

## I.

Moore argues that the district court erred by excluding evidence of P.B.'s mental-health diagnosis.

In April 2012, Moore moved to compel discovery of P.B.'s psychotherapy records. The district court ordered that the records be produced for an *in camera* inspection before the omnibus hearing. In October 2012, the district court ordered that some of the psychotherapy records be produced to Moore because they contained information that was relevant to the proceeding.

In March 2013, Moore filed a motion *in limine* in which he sought, among other things, a ruling that evidence concerning P.B.'s mental health was admissible. The district court ruled that either party could examine P.B. about certain aspects of her

6

medical history, which the district court identified in a confidential attachment to its order. But the district court also ruled that Moore could not introduce evidence of, among other things, P.B.'s mental-health diagnosis.[1] The district court reasoned that evidence of P.B.'s mental-health diagnosis and certain other subjects would be "highly prejudicial, offer little relevance to the issues the jury will have to decide, and will distract the jury from the issues raised in the case."

Consistent with its *in limine* ruling, the district court allowed Moore's trial counsel to examine P.B. about some of the symptoms of her diagnosis, such as specific incidents in the past when she could not remember events that she had experienced. The district court also allowed Moore's trial counsel to examine P.B. about her responses to a questionnaire administered by her psychotherapist. But Moore's trial counsel was not allowed to examine P.B. about her mental-health diagnosis or to introduce certain other evidence explaining the diagnosis.

When ruling on Moore's motion *in limine*, the district court applied the following statute, which is captioned, "Psychotherapy evidence":

> (a) In a prosecution under sections 609.342 to 609.3451 . . . , evidence of the patient's personal or medical history is not admissible except when:

---

[1]The district court's order was filed under seal. On appeal, Moore submitted the district court's order to this court in a confidential addendum, as required by the rules of appellate procedure. *See* Minn. R. Civ. App. P. 112.01, subd. 1; *see also* Minn. R. Civ. App. P. 112.03. In this opinion, we refer to the mental-health issues in only a general way because we strive to maintain the confidentiality of the detailed information that has been filed under seal in the district court and in this court. *See* Minn. R. Civ. App. P. 112.01, subd. 1; Minn. R. Pub. Access to Recs. of Jud. Branch 4, subd. 1(g)(2); *see also* *Coursolle v. EMC Ins. Grp., Inc.*, 794 N.W.2d 652, 655 n.1 (Minn. App. 2011).

(1)     the accused requests a hearing at least three business days prior to trial and makes an offer of proof of the relevancy of the history; and

(2)     the court finds that the history is relevant and that the probative value of the history outweighs its prejudicial value.

(b)     The court shall allow the admission only of specific information or examples of conduct of the victim that are determined by the court to be relevant.  The court's order shall detail the information or conduct that is admissible and no other evidence of the history may be introduced.

Minn. Stat. § 609.347, subd. 6 (2014).  This statute essentially requires a district court to conduct the type of balancing that is required by rule 403 of the Minnesota Rules of Evidence.  *Compare id.*, subd. 6(a)(2), *with* Minn. R. Evid. 403.  In this case, the district court did so by referring to the probative value and the potentially prejudicial nature of the challenged evidence.  The district court also considered the potential for the evidence to distract the jury from the issues it was required to decide.  In addition, the district court complied with the first sentence of subdivision 6(b) by expressly permitting Moore to introduce relevant evidence of specific incidents in which P.B. exhibited symptoms of her mental-health issues.

Moore agrees that the admissibility of his proffered evidence is governed by section 609.347, subdivision 6.[2]  He acknowledges that this court applies an abuse-of-

---

[2]In framing his appellate argument, Moore refers to a criminal defendant's constitutional right to a meaningful opportunity to present a complete defense, which is protected by the Due Process Clause of the United States Constitution.  *See State v. Jenkins*, 782 N.W.2d 211, 225-26 (Minn. 2010).  The United States Supreme Court caselaw holds that an evidentiary rule that "infringes upon a weighty interest of the accused and is arbitrary or disproportionate to the purposes the rule is designed to serve"

8

discretion standard of review to the district court's evidentiary ruling. *See State v. Vang*, 774 N.W.2d 566, 576-77 (Minn. 2009) (applying Minn. R. Evid. 403); *State v. Morris*, 606 N.W.2d 430, 435 (Minn. 2000) (applying section 609.347, subdivision 3). He contends that the district court erred by limiting his cross-examination of P.B. on the subject of her mental-health diagnosis and by limiting his extrinsic evidence relating to that particular diagnosis. He contends that the evidence is relevant and highly probative "because it is key to the central issue of this trial: consent." Moore further contends that evidence of P.B.'s mental-health diagnosis would not be highly prejudicial. In response, the state contends that the district court did not err in its ruling, in large part because the district court allowed Moore's trial counsel to question P.B. extensively about her mental-health issues.

We agree with the state that it is appropriate to put Moore's argument in context by considering the evidence that the district court allowed Moore to introduce on the same subject and closely related subjects. *See, e.g.*, *State v. Nissalke*, 801 N.W.2d 82, 102-03 (Minn. 2011) (concluding that exclusion of alternative-perpetrator evidence was not error because defendant introduced other evidence relevant to that theory). We also

___

violates the defendant's constitutional right to present a complete defense. *State v. Pass*, 832 N.W.2d 836, 841-42 (Minn. 2013) (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324-25, 126 S. Ct. 1727, 1731 (2006)) (alterations omitted). But "evidentiary rules designed to permit the exclusion of unfairly prejudicial, confusing, or misleading evidence are unquestionably constitutional." *Id.* (quotations omitted). Moore does not develop an argument that section 609.347, subdivision 6, is inconsistent with the constitutional right to a meaningful opportunity to present a complete defense. Accordingly, we construe Moore's argument to contend that the district court erred in its application of Minnesota law concerning the admissibility of evidence about P.B.'s psychotherapy.

9

agree that Moore's trial counsel devoted a significant portion of his cross-examination of P.B. to questions concerning her mental-health issues and memory issues. Specifically, Moore was allowed to introduce a substantial amount of evidence concerning symptoms and behaviors arising from P.B.'s mental-health diagnosis. The district court appropriately reasoned that the evidence directly related to P.B.'s diagnosis has less probative value. In doing so, the district court appropriately heeded the statutory command that it "shall allow the admission only of specific information or examples of conduct of the victim that are determined by the court to be relevant." Minn. Stat. § 609.347, subd. 6(b). The district court also appropriately reasoned that P.B.'s privacy interests weigh against admission of the evidence. That consideration is evident in the purpose of section 609.347, subdivision 6. Indeed, Moore's trial counsel acknowledged to the district court that the "stigma" associated with a mental-health diagnosis is a reason that favors exclusion of the evidence. Moreover, the district court's concern about juror distraction was reasonable because P.B.'s mental health was of secondary importance. The district court's written order states that consent was "the most critical fact to be determined by the jury," and the district court reasoned that the history of Moore's and P.B.'s sexual practices was most probative of the issue of consent. In light of the evidence of P.B.'s mental-health symptoms that the district court admitted, the district court weighed the proper factors in concluding that her mental-health diagnosis would be substantially more prejudicial than probative.

Thus, the district court did not abuse its discretion by excluding evidence of P.B's mental-health diagnosis.

## II.

Moore argues that the district court erred by not including the statutory definition of the word "force" in the jury instruction that explains the elements of the offense with which he was charged.

A district court must instruct the jury in a way that "fairly and adequately explain[s] the law of the case" and does not "materially misstate[] the applicable law." *State v. Koppi*, 798 N.W.2d 358, 362 (Minn. 2011). An appellate court reviews jury instructions "as a whole to determine whether [they] accurately state the law in a manner that can be understood by the jury." *State v. Kelley*, 855 N.W.2d 269, 274 (Minn. 2014). A district court has "considerable latitude" in selecting the language of jury instructions. *State v. Gatson*, 801 N.W.2d 134, 147 (Minn. 2011). Accordingly, this court applies an abuse-of-discretion standard of review to a district court's jury instructions. *Koppi*, 798 N.W.2d at 361.

At the instructions conference, the prosecutor raised a question as to whether the district court's instruction on third-degree criminal sexual conduct should include the statutory definition of the word "coercion." After Moore's trial counsel objected, the prosecutor withdrew the request, noting that a definition of "coercion" is unnecessary because the state's theory is that Moore penetrated P.B. using force, not coercion. Neither the prosecutor nor Moore's trial counsel raised a question concerning the definition of the word "force."

The district court gave the following jury instruction to explain the charge of third-degree criminal sexual conduct:

11

The statutes of Minnesota provide that whoever intentionally engages in sexual penetration with another person and uses force or coercion to accomplish the penetration is guilty of a crime.

The elements of criminal sexual conduct in the third degree are first, the defendant intentionally sexual penetrated [P.B.]. Sexual intercourse constitutes sexual penetration if there is any intrusion, however slight, of the penis into the female genital opening. Cunnilingus constitutes sexual penetration if there is any contact between the female genital opening of one person and the mouth, tongue or lips of another person.

Second, the sexual penetration occurred without the consent of [P.B.]. Consent means a person's words or overt actions that indicate a freely given present agreement to perform a particular sexual act with the defendant. Consent does not mean the existence of a prior or current social relationship between the defendant and [P.B.], or that [P.B.] failed to resist a particular sexual act.

Third, the defendant used force or coercion to accomplish penetration. Fourth, the defendant's act took place on or about July 7, 2011, in Sherburne County. If you find that each of these elements has been proved beyond a reasonable doubt the defendant is guilty. If you find that any element has not been proven beyond a reasonable doubt, the defendant is not guilty.

This instruction is nearly identical to a pattern jury instruction for third-degree criminal sexual conduct. *See* 10 Minnesota Dist. Judges' Ass'n, *Minnesota Practice – Jury Instruction Guides*, § 12.21, at 301 (5th ed. 2006).

Moore concedes that he did not object to the jury instruction on the ground he now argues on appeal and that this court should review only for plain error. *See* Minn. R. Crim. P. 31.02; *Gatson*, 801 N.W.2d at 146-47. Under the plain-error test, an appellant is entitled to relief on an issue to which no objection was made at trial only if (1) there is an

12

error, (2) the error is plain, and (3) the error affects the appellant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If these three requirements are satisfied, an appellant also must satisfy a fourth requirement, that the error "seriously affects the fairness and integrity of the judicial proceedings." *State v. Little*, 851 N.W.2d 878, 884 (Minn. 2014). If an appellate court concludes that any requirement of the plain-error test is not satisfied, the appellate court need not consider the other requirements. *State v. Brown*, 815 N.W.2d 609, 620 (Minn. 2012).

## A.     Whether District Court Erred

We begin by considering whether the district court committed an error. *See Griller*, 583 N.W.2d at 740. As stated above, a district court's jury instructions must "fairly and adequately explain the law of the case" and must not "materially misstate the applicable law." *Koppi*, 798 N.W.2d at 362. Moore relies on *State v. Vance*, 734 N.W.2d 650 (Minn. 2007), *overruled on other grounds by State v. Fleck*, 810 N.W.2d 303, 311 (Minn. 2012), for the proposition that "jury instructions must define the crime charged and explain the elements of the offense to the jury." *Id.* at 656; *see also State v. Milton*, 821 N.W.2d 789, 806 (Minn. 2012). Moore essentially asks this court to conclude that the jury instructions did not say enough to "fairly and adequately explain" the crime of which he was charged, *Koppi*, 798 N.W.2d at 362, or did not say enough to "define the crime charged and explain the elements of the offense to the jury," *Vance*, 734 N.W.2d at 656.

The extent to which a district court must explain the law of the case, define the crime charged, and explain the elements of the offense naturally depends on both the

13

facts and the law in a particular case and, thus, is not well suited to a bright-line rule. In *Peterson v. State*, 282 N.W.2d 878 (Minn. 1979), the supreme court stated that "the elements of the crime should be explained, but detailed definitions of the elements to the crime need not be given in the jury instructions if the instructions do not mislead the jury or allow it to speculate over the meaning of the elements." *Id.* at 881. The qualifier in that statement suggests that detailed definitions of an element of an offense may be necessary if, without the additional detail, the instructions could mislead the jury or cause the jury to speculate about what the state must prove to obtain a guilty verdict. *See id.*

Moore contends that, in this case, the district court's instruction on third-degree criminal sexual conduct needed additional details concerning the definition of the word "force," for two reasons. First, he asserts that the legislature defined the word "force" for purposes of the criminal-sexual-conduct statute and, thus, gave the word a specific meaning as a matter of law. *See* Minn. Stat. § 609.341, subd. 3. Second, he asserts that the statutory definition of force is narrower than the common understanding of the word, which jurors are more likely to know and apply in their deliberations, absent an instruction on the statutory definition. He contends that the differences between the statutory definition and the lay definition give rise to the possibility that a jury might find a defendant guilty based on conduct that is within the lay definition but not within the statutory definition. For these reasons, Moore contends that the district court's instruction in this case, which did not provide any definition of "force," did not adequately explain the law to the jury.

14

Moore's argument has merit. The word "force," as used in the statute that Moore is charged with violating, has a specific meaning. The legislature has determined that, in this particular context, "force" means:

> the infliction, attempted infliction, or threatened infliction by the actor of bodily harm or commission or threat of any other crime by the actor against the complainant or another, which (a) causes the complainant to reasonably believe that the actor has the present ability to execute the threat and (b) if the actor does not have a significant relationship to the complainant, also causes the complainant to submit.

Minn. Stat. § 609.341, subd. 3.[3] The term "bodily harm" is defined in the criminal code to mean "physical pain or injury, illness, or any impairment of physical condition." Minn. Stat. § 609.02, subd. 7. Meanwhile, the lay definition of the word "force" is different in significant ways. When used as a noun, the word traditionally meant "1. Strength or energy; active power; vigor," or "3. Power, violence, compulsion, or constraint exerted upon a person or thing." *Webster's New International Dictionary* 985 (2d ed. 1946); *see also Webster's Ninth New Collegiate Dictionary* 482 (9th ed. 1986) (stating nearly identical definition). A more contemporary dictionary defines the word similarly to mean, "[2.]b. The use of physical power or violence to compel or restrain." *The American Heritage Dictionary of the English Language* 685 (5th ed. 2011). Another dictionary defines the word as "2. strength or power exerted upon an object; physical

---

[3]This definition is reflected in a pattern jury instruction. *See* 10 Minnesota Dist. Judges' Ass'n, *Minnesota Practice – Jury Instruction Guides*, § 12.01, at 264-65 (5th ed. 2006). The pattern instruction for the elements of third-degree criminal sexual conduct makes a cross-reference to the pattern instruction stating the definition of "force," without stating clearly that the definition should be included in the jury instructions. *See Minnesota Practice – Jury Instruction Guides*, § 12.21, at 301 n.1 (citing *Minnesota Practice – Jury Instruction Guides*, § 12.01, at 264-65).

coercion; violence." *The Random House Dictionary of the English Language* 748 (2d ed. 1983). We have found only one dictionary that includes a sense of the word that resembles the statutory definition: "[3.]c. violence or such threat or display of physical aggression toward a person as reasonably inspires fear of pain, bodily harm, or death." *Webster's Third New International Dictionary* 887 (3d ed. 1961).

We agree with Moore that the most-common lay definition of the word "force" is different from, and in some ways broader than, the statutory definition. In the context of this case, the legislature's definition of the word requires proof that a defendant either inflicted, attempted to inflict, or threatened to inflict bodily harm to P.B.[4] *See* Minn. Stat. § 609.341, subd. 3. As stated above, "bodily harm" means "physical pain or injury, illness, or any impairment of physical condition." Minn. Stat. § 609.02, subd. 7. But the lay definitions of "force" usually do not reference bodily harm, physical pain, injury, illness, or physical impairment, either by those terms or similar terms. Thus, a jury applying the common understanding of the word "force" to the elements of third-degree criminal sexual conduct could find a defendant guilty of the offense merely by concluding that he exerted "strength," "energy," or "power" against a victim, without any actual, attempted, or threatened infliction of bodily harm, as required by the legislature. Such an outcome would be inconsistent with a defendant's right to "a jury determination that he is guilty of every element of the crime with which he is charged." *State v. Caldwell*, 803 N.W.2d 373, 384 (Minn. 2011) (citing *Apprendi v. New Jersey*, 530 U.S.

---

[4]We confine our analysis to the first part of the definition because, in this case, there is no suggestion that Moore committed another crime against P.B. or threatened to do so.

466, 477, 120 S. Ct. 2348, 2356 (2000), and *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1072 (1970)) (other citations omitted).

For these reasons, this case is different from *Peterson*, in which the supreme court concluded that the challenged instruction, which omitted a statutory definition, was not erroneous. *See*, 282 N.W.2d at 882. In *Peterson*, "the commonly understood meaning of 'great bodily harm' was sufficient to convey the essentials of the element to the jury" and, significantly, was consistent with the statutory definition of that term. *See id.* at 881-82. But in the present case, the lay definition of the word "force" is different from the statutory definition because the lay definition describes some conduct that is not within the statutory definition. For that reason, the jury instruction in this case did not accurately state the applicable definition of the word "force." *See State v. Bustos*, ____ N.W.2d ____, 2015 WL 1452894, *6 (Minn. Apr. 1, 2015) (concluding that jury instruction was erroneous because it was broader than statutory definition of "domestic abuse"); *State v. Ihle*, 640 N.W.2d 910, 916-17 (Minn. 2002) (concluding that jury instruction was erroneous because it did not reflect narrow limits of prior supreme court opinion).

Thus, the district court erred by not including the statutory definition of "force" in the jury instruction on third-degree criminal sexual conduct.

B. **Whether Error Is Plain**

We next must determine whether the district court's error is plain. *See Griller*, 583 N.W.2d at 740. An error is "plain" if it is clear or obvious, and an error is clear or obvious if it "contravenes a rule, case law, or a standard of conduct, or when it disregards

17

well-established and longstanding legal principles." *State v. Brown*, 792 N.W.2d 815, 823 (Minn. 2011) (citation omitted). To determine whether an error is plain, this court "examines the law in existence at the time of appellate review." *State v. Kelley*, 855 N.W.2d 269, 277 (Minn. 2014).

Neither the supreme court nor this court previously has held that a jury instruction on third-degree criminal sexual conduct in violation of section 609.344, subdivision 1(c), must include the statutory definition of "force." Similarly, neither the supreme court nor this court previously has held in any other type of prosecution that a jury instruction was erroneous because the instruction did not include a statutory definition of a word in the elements of the offense.[5] In *Peterson*, the supreme court provided useful guidance but nonetheless approved of the instruction given in that case. 282 N.W.2d 881-82. Thus, the *Peterson* opinion did not provide clear warning that the jury instruction in this case must include the statutory definition of "force." Similarly, the *Ihle* opinion involved an analogous situation but did not answer the question presented by Moore's appeal because the *Ihle* court was not concerned with a statutory definition. *See* 640 N.W.2d at 917. Indeed, Moore's appellate brief cites *Ihle* but not with emphasis. In addition, the *Bustos*

---

[5]In several other states, appellate courts have held that a district court's jury instructions were erroneous because they omitted a legal or statutory definition of a word in the elements of the offense. *See, e.g.*, *McKee v. State*, 488 P.2d 1039, 1043 (Alaska 1971); *Griego v. People*, 19 P.3d 1, 7 (Colo. 2001); *Abercrombie v. State*, 478 N.E.2d 1236, 1239 (Ind. 1985); *State v. Kellogg,* 542 N.W.2d 514, 518 (Iowa 1996) *In re Pouncy*, 229 P.3d 678, 682 (Wash. 2010); *Lucero v. State*, 14 P.3d 920, 923 (Wyo. 2000). Similarly, some state appellate courts have stated that definitions should be included in jury instructions if the lay definition of a key word differs from the statutory or legal definition of that word. *See, e.g.*, *People v. Griffin*, 94 P.3d 1089, 1093 (Cal. 2004); *Kitchens v. State*, 279 S.W.3d 733, 737 (Tex. Crim. App. 2007); *State v. Dix*, 273 N.W.2d 250, 256-57 (Wis. 1979).

opinion does not speak to the issue presented by Moore's appeal because *Bustos* concerns a jury instruction that makes an affirmative misstatement of law. 2015 WL 1452894 at *6; *see also Koppi*, 798 N.W.2d at 362-64; *State v. Kuhnau*, 622 N.W.2d 552, 556-57 (Minn. 2001). In the present case, the district court did not misstate the elements of the charged offense but, rather, failed to include details that are necessary to fully explain the applicable law. Accordingly, the pre-existing caselaw did not "clearly require[]" a district court to include a statutory definition in its jury instructions in the present circumstances. *See Milton*, 821 N.W.2d at 807 (concluding that error is not plain).

Thus, the district court's error is not plain. This conclusion is sufficient to uphold the conviction.

## C.      Whether Instruction Affected Moore's Substantial Rights

Although we need not do so, *see Brown*, 815 N.W.2d at 620, we next consider whether the district court's error affected Moore's substantial rights. *Griller*, 583 N.W.2d at 740. An error affects a defendant's substantial rights "if the error was prejudicial and affected the outcome of the case." *Id.* at 741. "In the context of jury instructions, we have held that an error affects substantial rights when there is a reasonable likelihood that a more accurate instruction would have changed the outcome in this case." *State v. Gutierrez*, 667 N.W.2d 426, 434-35 (Minn. 2003) (quotation omitted). An appellant bears a "heavy burden" in seeking to satisfy the third requirement. *State v. Davis*, 820 N.W.2d 525, 535 (Minn. 2012).

To establish that Moore used "force" to accomplish sexual penetration, the state needed to prove that he either (1) inflicted, attempted to inflict, or threatened to inflict

bodily harm on P.B. or (2) committed or threatened to commit another crime against P.B. *See* Minn. Stat. § 609.341, subd. 3. As previously noted, we may confine our analysis to the first part of the definition of "force," which is concerned with bodily harm, because there is no suggestion in this case that Moore committed or threatened another crime against P.B. Proof of "bodily harm" requires evidence of "physical pain or injury, illness, or any impairment of physical condition." Minn. Stat. § 609.02, subd. 7. The state introduced evidence that Moore caused P.B. physical pain. She specifically testified that she awoke to a "sharp pain" because Moore was biting one of her breasts. In addition, she testified that Moore pulled her hair and that she and Moore previously had engaged in hair pulling in past sexual encounters for the purpose of causing pain. Furthermore, the state introduced evidence that Moore caused P.B. physical injuries consisting of five small lacerations on the walls of her vagina. Accordingly, the state introduced evidence that is sufficient to persuade a properly instructed jury that Moore used "force" in his sexual penetration of P.B.

The third requirement of the plain-error test is not concerned solely with whether the evidence is sufficient to prove the elements of the charged offense. The key question is whether "there is a reasonable likelihood that a more accurate instruction would have changed the outcome in this case." *See Gutierrez*, 667 N.W.2d at 434-35 (quotations omitted). Our analysis of this question must account for the reality that "force" was not the most important issue at trial. *See Kelley*, 855 N.W.2d at 284 (concluding that plain error in not giving accomplice-liability jury instruction did not affect appellant's substantial rights in part because defense "did not focus on accomplice liability").

20

Rather, consent was the most important issue. The district court said so when ruling on Moore's motion *in limine*. In closing argument, the prosecutor emphasized P.B.'s text message to Moore that she did not want to have sex with him, as well as her testimony that she told Moore "no" while he assaulted her. Likewise, Moore's trial counsel emphasized Moore's statement to officers that the sexual intercourse was consensual, P.B.'s suggestive text messages to Moore before she arrived in Minnesota, and P.B.'s motive to lie in order to explain her bruised breast and thereby preserve her relationship with her fiancé. In his appellate brief, Moore states that consent was the "central issue" at trial. If Moore had had the benefit of a more-complete explanation of the elements of the charged offense, it appears that he still would have had the same difficulty in persuading the jury that P.B. consented to sexual conduct.

Moore contends that the prosecutor's closing argument demonstrates that the erroneous instruction affected his substantial rights. Specifically, he asserts that the prosecutor assumed and applied an incorrect understanding of force. Moore is correct that part of the prosecutor's argument is inconsistent with the statutory definition of "force." But that misstatement represents only one isolated comment in a closing argument that spans approximately 12 pages of the trial transcript. Elsewhere in her closing argument, the prosecutor discussed force in a way that is consistent with the statutory definition, by stating that Moore penetrated P.B. with "force so that she has injuries." In any event, we must assume that, if the district court had instructed the jury on the statutory definition of force, the prosecutor would have conformed her argument to that definition. For the reasons discussed above, we are unable to conclude that there is a

21

reasonable probability that a properly instructed jury would have considered the evidence and the statutory definition of "force" and reached the conclusion that Moore did not use force when he sexually penetrated P.B.  *See Milton*, 821 N.W.2d at 809.

Thus, the district court's erroneous instruction did not affect Moore's substantial rights.  This conclusion also is sufficient to uphold the conviction.  Therefore, Moore is not entitled to a new trial despite the district court's error in instructing the jury.

## D E C I S I O N

The district court did not err by excluding evidence of P.B.'s mental-health diagnosis.  The district court's error in its jury instruction on the elements of the charged offense of third-degree criminal sexual conduct was not plain and did not affect Moore's substantial rights.

**Affirmed.**