*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0829**

State of Minnesota,
Respondent,

vs.

Scott Jeffrey Hanson,
Appellant.

**Filed May 23, 2016
Affirmed
Johnson, Judge**

Cottonwood County District Court
File No. 17-CR-14-256

Lori Swanson, Attorney General, Edwin W. Stockmeyer, Assistant Attorney General, St. Paul, Minnesota; and

Nick Anderson, Cottonwood County Attorney, Windom, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Charles F. Clippert, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Worke, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

A Cottonwood County jury found Scott Jeffrey Hanson guilty of assault and possession of an explosive device by a prohibited person. The jury's verdict is based on

evidence that Hanson stabbed a neighbor and threatened a law-enforcement officer with a homemade bomb. On appeal, Hanson argues that the district court erred by denying his motion to suppress evidence and by misstating the law of self-defense in its jury instructions. We affirm.

**FACTS**

In July 2014, Hanson and T.J.P. were neighbors in the city of Jeffers. One evening they had a physical altercation. Three witnesses gave conflicting accounts of the altercation at trial.

T.J.P. testified for the state that he shared a driveway with Hanson and stored a vehicle there for a few days while planning to take it to his auto-body shop. One day T.J.P. noticed that the vehicle's battery had been replaced, that the battery cables had been disconnected, and that the gas lines had been cut. Upon making this discovery, T.J.P. made a loud accusatory statement that was directed at Hanson. T.J.P. took the vehicle to his shop, where he worked on it for the remainder of the day. When he returned home at approximately 9:00 p.m., Hanson ran toward him swinging a rake. T.J.P. was able to take the rake away from Hanson and told Hanson to leave. When T.J.P. turned away, Hanson stabbed him in the back. T.J.P. threw Hanson to the ground, and Hanson stabbed T.J.P. in the ankle. Hanson's girlfriend, J.C., kicked T.J.P. while he was on the ground. Hanson and J.C. then ran back into Hanson's house. T.J.P. did not see the knife well enough to describe it.

J.C. testified for the defense that she was inside Hanson's house when she heard T.J.P. and Hanson outside, yelling at each other. When she went outside, she saw T.J.P.

hit Hanson with the rake and saw Hanson try to block the rake. After a lull in the fighting, J.C. testified that she saw T.J.P. punch Hanson in the head five to eight times. The fight ceased, and T.J.P. walked home. C.S., a friend of Hanson, testified for the defense that she also was at Hanson's house that evening, on his porch. C.S. saw T.J.P. hit Hanson with a rake and saw Hanson hit T.J.P. with a stick. C.S. testified that the fight ended when J.C. came outside and told the men to stop.

A person at T.J.P.'s home called 911. Cottonwood County Deputy Sheriff Justin Derickson was the first law-enforcement officer to arrive. While waiting for back-up officers to arrive, Deputy Derickson observed C.S. exit Hanson's house through a back door. Deputy Derickson and two other officers approached Hanson's back door and knocked. Hanson ran up the basement stairs and kicked the door shut. Shortly thereafter, J.C. exited the house, leaving the back door open enough for Deputy Derickson to see inside the house and down the basement stairs. Deputy Derickson called out to Hanson. Hanson appeared at the bottom of the stairs holding what Deputy Derickson described as a "homemade bomb" in one hand and a lit propane torch in the other hand. Deputy Derickson described the homemade bomb as a spray can with a large firecracker taped to the side of it. Hanson climbed the steps toward Deputy Derickson, bringing the torch closer to the firecracker fuse with each step. Deputy Derickson asked Hanson what he was going to do with the torch; Hanson responded by saying, "I'm going to f--k you up." Deputy Derickson closed the door, and the officers moved away from the house.

Several hours later, Hanson exited the house and was arrested. Meanwhile, T.J.P. was transported to a nearby hospital, where his heart stopped beating and he lost

3

consciousness due to significant blood loss. He later was airlifted to a hospital in Sioux Falls, South Dakota. He sustained long-term nerve damage to his foot.

After Hanson was arrested, Deputy Derickson applied for a warrant to search Hanson's house for, among other things, a "[k]nife or sharp object that could cause death or bodily harm or any sharp weapons or instruments that also could cause death or bodily injury." The district court issued a warrant that authorized officers to search for simply "[a] knife." Officers executed the search warrant and found, among other things, a rake, eight knives, a propane torch, and the homemade bomb that Deputy Derickson had seen. One of the knives appeared to have blood on its blade. That knife was sent to the BCA for DNA analysis along with DNA samples from T.J.P. and Hanson. The blood on the blade matched T.J.P.'s blood. DNA found on the handle of the knife matched genetic material of both T.J.P. and Hanson.

The state charged Hanson with five offenses: (1) first-degree assault of T.J.P., in violation of Minn. Stat. § 609.221, subd. 1 (2012); (2) second-degree assault of T.J.P. with a dangerous weapon and inflicting substantial bodily harm, in violation of Minn. Stat. § 609.222, subd. 2 (2012); (3) second-degree assault with a dangerous weapon of Deputy Derickson, in violation of Minn. Stat. § 609.222, subd. 1; (4) second-degree assault with a dangerous weapon of another officer, in violation of Minn. Stat. § 609.222, subd. 1; and (5) possession of an explosive device by a prohibited person, in violation of Minn. Stat. § 609.668, subd. 2(b) (2012).

Hanson moved to suppress some of the evidence that was seized during the search of his home. The district court granted the motion in part and denied it in part. The district

court concluded that the rake, propane torch, homemade bomb, and several other items were lawfully seized because officers saw them in plain view during the search. But the district court also concluded that several other items were not lawfully seized because there was no nexus between the suspicions of criminal activity and the place searched.

The case was tried to a jury in January 2015. Before trial, the state dismissed count 4. In his opening statement, Hanson's attorney conceded that Hanson stabbed T.J.P. but asserted that Hanson was acting in self-defense. In his closing argument, Hanson's attorney relied on a theory of self-defense. The jury found Hanson guilty on all counts. The district court imposed prison sentences of 159 months on count 1; 21 months on count 3, to be served consecutively with the sentence on count 1; and 60 months on count 5, to be served concurrently with the sentences on counts 1 and 3. Hanson appeals.

**D E C I S I O N**

**I. Specificity of Search Warrant**

Hanson first argues that the district court erred by denying his motion to suppress the evidence that was obtained in the execution of the search warrant on the ground that the search warrant was not sufficiently specific.

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing the place to be searched, and the persons or things to be seized*." U.S. Const. amend. IV (emphasis added); *see also* Minn. Const. art. I, § 10. Hanson's first argument is based on the language that is

5

highlighted above. The particularity requirement prevents a "general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S. Ct. 2022, 2038 (1971). The particularity requirement also "prevents the seizure of one thing under a warrant describing another." *Marron v. United States*, 275 U.S. 192, 196, 48 S. Ct. 74, 76 (1927). "A particular warrant also assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Groh v. Ramirez*, 540 U.S. 551, 561, 124 S. Ct. 1284, 1292 (2004) (quotation omitted). "[A] search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Massachusetts v. Sheppard*, 468 U.S. 981, 988 n.5, 104 S. Ct. 3424, 3427 n.5 (1984).

Hanson's primary challenge to the particularity of the search warrant is that the warrant said simply "a knife," without describing a particular type or size of knife. The argument made by Hanson's appellate attorney is different from the argument previously made by his trial attorney. In the district court, Hanson's attorney argued that the search warrant was invalid on the ground that it did not describe anything other than a knife and, thus, did not justify the seizure of any evidence that was "not a knife." At the omnibus hearing, Hanson's attorney reiterated that the issue was "whether the search warrant or the seizure of items from the house that were not specifically knives exceeded the scope of the search warrant." Hanson's attorney also stated that he was asking the district court to suppress "any item that is not a knife." When the court asked for clarification, Hanson's attorney confirmed that he was asking the district court to suppress only the evidence "[t]hat is not a knife."

"Defenses, objections, issues, or requests that can be determined without trial on the merits must be made before trial by a motion to dismiss or to grant appropriate relief." Minn. R. Crim. P. 10.01, subd. 2. Any such motion "must include all defenses, objections, issues, and requests then available," and a defendant's "[f]ailure to include any of them in the motion constitutes waiver," absent good cause. *Id.*; *see also* Minn. R. Crim. P. 11 cmt. (stating that "failure to raise known issues at the Omnibus Hearing" pursuant to rule 11.02 "waives that issue"). Hanson's argument that the knife should have been suppressed is waived because he expressly limited his suppression motion and did not ask the district court to suppress the knife.[1] *See State v. Bauer*, 512 N.W.2d 112, 115-16 (Minn. App. 1994) (concluding that appellant waived challenge to "general scientific credibility of" DNA evidence by limiting suppression motion to challenge to DNA probability evidence), *aff'd*, 516 N.W.2d 174 (Minn. 1994).

---

[1]Even if we were to consider the argument, we would reject it on the merits. "Where the precise identity of goods cannot be ascertained at the time the warrant is issued, naming only the generic class of items will suffice . . . ." *State v. Miller*, 666 N.W.2d 703, 713 (Minn. 2003) (quotation omitted). "[W]hen determining whether a clause in a search warrant is sufficiently particular, the circumstances of the case must be considered, as well as the nature of the crime under investigation and whether a more precise description is possible under the circumstances." *Id.* In this case, at the time of the warrant application, the investigating law-enforcement officers did not have any details about the knife. Deputy Derickson knew only that T.J.P. had been stabbed with a knife. T.J.P. was under medical care in a hospital in another state. T.J.P.'s trial testimony indicates that, even if he had been able to communicate with Deputy Derickson at that time, he would have been unable to provide any details about the knife. The search warrant was sufficiently particular because "a knife" was as specific as possible given what law enforcement knew at the time they applied for the warrant. *See State v. Hannuksela*, 452 N.W.2d 668, 673-74 (Minn. 1990) (concluding that warrant was sufficiently particular because officers did not "definitely know all of the circumstances surrounding" the offense).

Hanson's secondary challenge to the particularity of the search warrant is that the warrant made no reference to the incriminating items that were found, namely, the homemade bomb. This is the argument that his trial attorney presented to the district court. The district court did not deny the motion to suppress on the ground that the warrant satisfied the particularity requirement with respect to the homemade bomb. Rather, the district court reasoned that the homemade bomb was properly seized on the basis of the plain-view doctrine. *See State v. DeWald*, 463 N.W.2d 741, 747 (Minn. 1990). In his appellate brief, Hanson does not challenge the district court's reasoning because he does not include any argument that the district court erred in its application of the plain-view doctrine.

Thus, the district court did not err by denying Hanson's motion to suppress evidence.

## II. Jury Instruction

Hanson also argues that the district court erred in its jury instruction on the issue of self-defense. Specifically, Hanson contends that the district court's instruction on self-defense includes elements of proof that are not included in the self-defense statute. *See* Minn. Stat. § 609.06, subd. 1(3) (2012).

The law applicable to Hanson's argument is as follows:

> A district court must instruct the jury in a way that "fairly and adequately explain[s] the law of the case" and does not "materially misstate[] the applicable law." *State v. Koppi*, 798 N.W.2d 358, 362 (Minn. 2011). An appellate court reviews jury instructions "as a whole to determine whether [they] accurately state the law in a manner that can be understood by the jury." *State v. Kelley*, 855 N.W.2d 269, 274

8

(Minn. 2014). A district court has "considerable latitude" in selecting the language of jury instructions. *State v. Gatson*, 801 N.W.2d 134, 147 (Minn. 2011). Accordingly, this court applies an abuse-of-discretion standard of review to a district court's jury instructions. *Koppi*, 798 N.W.2d at 361.

*State v. Moore*, 863 N.W.2d 111, 118 (Minn. App. 2015) (alterations in original), *review denied* (Minn. July 21, 2015).

Before trial, Hanson submitted proposed jury instructions. On the issue of self-defense, Hanson proposed a pattern jury instruction commonly known as CRIMJIG 7.06. *See* 10 Minnesota Dist. Judges' Ass'n, *Minnesota Practice – Jury Instruction Guides*, § 7.06, at 29 (5th ed. Supp. 2010).[2] The district court essentially adopted CRIMJIG 7.06 by instructing the jury on count 1 as follows:

> Self-defense. The defendant is not guilty of assault in the first degree if the defendant used reasonable force against [T.J.P.] to resist an offense against the person, and such an offense was being committed, or the defendant reasonably believed that it was. It is lawful for a person who is being assau--- who is being assaulted, and who has reasonable grounds to believe that bodily injury is about to be inflicted on a person to defend from an attack. In doing so, the person may use all force and means that the person reasonably believes to be necessary, and that would appear to reasonable person, in similar circumstances, to be necessary to prevent an injury that appears to be imminent. An assault is the intentional infliction of bodily harm on another. The kind and degree of force a person may lawfully use in self-defense is limited by what a reasonable person in the same situation would believe to be necessary. Any use of force beyond that is regarded by the law as excessive. The State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense.

---

[2] This pattern jury instruction recently was edited and renumbered as CRIMJIG 7.05. *See* 10 Minnesota Dist. Judges' Ass'n, *Minnesota Practice – Jury Instruction Guides*, § 7.05, at 133-34 (6th ed. 2015).

Because Hanson did not object to the jury instruction he challenges on appeal (and, in fact, actually proposed it), this court will review only for plain error. *See* Minn. R. Crim. P. 31.02; *Gatson*, 801 N.W.2d at 146-47; *see also State v. Goelz*, 743 N.W.2d 249, 258 (Minn. 2007) (analyzing invited error under plain-error test). Under the plain-error test, an appellant is entitled to relief on an issue to which no objection was made at trial only if (1) there is an error, (2) the error is plain, and (3) the error affects the appellant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If these three requirements are satisfied, an appellant also must satisfy a fourth requirement, that the error "seriously affects the fairness and integrity of the judicial proceedings." *State v. Little*, 851 N.W.2d 878, 884 (Minn. 2014). If an appellate court concludes that any requirement of the plain-error test is not satisfied, the appellate court need not consider the other requirements. *State v. Brown*, 815 N.W.2d 609, 620 (Minn. 2012).

Hanson contends that the district court's instruction is inconsistent with the plain language of the self-defense statute, which provides that "reasonable force may be used upon or toward the person of another without the other's consent when the following circumstances exist or the actor reasonably believes them to exist: . . . when used by any person in resisting or aiding another to resist an offense against the person." *See* Minn. Stat. § 609.06, subd. 1(3). The supreme court has interpreted section 609.06, subdivision 1(3), by stating that the defense of self-defense applies if four conditions exist:

> (1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he or she was in imminent danger of . . . bodily harm; (3) the existence of reasonable grounds for that belief; and (4) the

10

> absence of a reasonable possibility of retreat to avoid the danger.

*State v. Devens*, 852 N.W.2d 255, 258 (Minn. 2014) (quoting *State v. Basting*, 572 N.W.2d 281, 285-86 (Minn. 1997)).

The district court's instruction on self-defense incorporated the second and third of the four requirements of self-defense. The supreme court has approved of pattern jury instructions concerning self-defense that are substantially similar to the pattern instruction on which the district court relied. *See, e.g.*, *State v. Radke*, 821 N.W.2d 316, 327 (Minn. 2012); *State v. Hare*, 575 N.W.2d 828, 832-33 (Minn. 1998); *State v. Edwards*, 343 N.W.2d 269, 277 (Minn. 1984). The district court in this case hewed closely to the language of the pattern instruction. Most importantly, Hanson does not argue that the district court's instruction is inconsistent with the caselaw on self-defense. Accordingly, Hanson cannot show that the challenged jury instruction does not "fairly and adequately explain the law of the case" or that it "materially misstate[d] the applicable law." *See Koppi*, 798 N.W.2d at 362.

Thus, the district court did not err in its instruction on self-defense.

**Affirmed.**