STATE OF MINNESOTA

IN SUPREME COURT

A23-1905

Court of Appeals                                                    Hudson, C.J.

State of Minnesota,

        Respondent,

vs.                                                           Filed: February 4, 2026
                                                           Office of Appellate Courts
Jamie Sara Schmeichel,

        Appellant.

_____

Keith Ellison, Attorney General, Saint Paul, Minnesota;

Robb L. Olson, Andrew D. Tiede, Lino Lakes City Prosecutors, GDO Law, White Bear Lake, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Leah C. Graf, Assistant Public Defender, Saint Paul, Minnesota, for appellant.

Barry S. Edwards, Keller Law Offices, Minneapolis, Minnesota, for amici curiae Minnesota Association of Criminal Defense Lawyers and Minnesota Society for Criminal Justice.

_____

S Y L L A B U S

When a district court instructs a jury in a test refusal case that the State must prove the defendant refused to submit to the test, the district court does not abuse its discretion by denying the defendant's request to also instruct the jury that the State must prove the defendant's actual unwillingness to submit to chemical testing.

Affirmed.

1

HUDSON, Chief Justice.

At issue in this case are the district court's jury instructions for a charge of test refusal under Minn. Stat. § 169A.20, subd. 2.  At trial, appellant Jamie Schmeichel asked the district court to instruct the jury that respondent State of Minnesota had to prove her actual unwillingness to submit to chemical testing.  The district court denied Schmeichel's request, but it did instruct the jury that one of the elements the State had to prove was that Schmeichel refused to submit to the test.  The jury found Schmeichel guilty of second-degree test refusal.  The court of appeals affirmed Schmeichel's conviction.  We hold that when a district court instructs a jury in a test refusal case that the State must prove the defendant refused to submit to the test, the district court does not abuse its discretion by denying the defendant's request to also instruct the jury that the State must prove the defendant's actual unwillingness to submit to chemical testing.  We therefore affirm the decision of the court of appeals.

**FACTS**

On the morning of October 4, 2021, law enforcement officers responded to the scene of a single-vehicle crash in Lino Lakes.  The car involved was in a ditch, and Schmeichel was the driver.  Responding officers smelled the odor of an alcoholic beverage coming from either Schmeichel or the car. They also noticed that Schmeichel's speech was slightly slurred and that her eyes were bloodshot and watery.  A state trooper asked Schmeichel to take a preliminary breath test, but after multiple attempts, she did not provide an adequate sample.  The trooper used a "manual capture" function to test the small

sample Schmeichel provided, which indicated a 0.076 alcohol concentration. Schmeichel was taken to the hospital in an ambulance.

The trooper secured a search warrant to obtain Schmeichel's blood or urine. The trooper then went to the hospital and asked Schmeichel to provide a blood or a urine sample. Schmeichel provided neither sample.

Respondent State of Minnesota charged Schmeichel with one count of second-degree test refusal and one count of third-degree driving while impaired (DWI). Second-degree test refusal is governed by Minn. Stat. §§ 169A.25, subd. 1(b) (2020), 169A.20, subd. 2(2) (2020), and third-degree DWI is governed by Minn. Stat. §§ 169A.20, subd. 1(1) (2020), 169A.26, subd. 1(a) (2020).[1] The district court held a two-day jury trial at which two responding law enforcement officers testified for the State and Schmeichel testified in her own defense. At trial, there was conflicting testimony about the interaction between the trooper and Schmeichel at the hospital. The trooper testified that he told Schmeichel he had a warrant and that refusal was a crime, after which she became loud, afraid, and refused both blood and urine testing. Schmeichel testified that she did not refuse testing but expressed that she had a medical reaction to needles and asked for an attorney. She also testified that she never refused a urine test, but rather she told the trooper she would provide a sample when able, and he left without returning.

---

[1] In 2023, after the date of Schmeichel's offense, subdivision 1(a) of Minn. Stat. § 169A.26 was amended. Act of Apr. 18, 2023, ch. 25, § 85, 2023 Minn. Laws 161, 207 (codified as amended at Minn. Stat. § 169A.26 (2023)).

At the close of trial, Schmeichel requested that the district court add language regarding the meaning of "refuse" to what was then the pattern jury instruction on test refusal. Schmeichel's request was as follows:

> In State versus Ferrier, the Court of Appeals determined that in order to be found guilty of a refusal to submit to chemical testing, the defendant needs to demonstrate actual unwillingness.

> Essentially, the point I would like to make[] is this language would be helpful just to make it clear to the jury that it's not a subjective—it's not subjective from the officer's point of view. It's an objective [sic] in light of a reasonable officer that she actually was unwilling to participate in the test.

The State objected, arguing that the requested instruction would create confusion. The district court denied the request.

> The district court gave the following instruction on the elements of test refusal:

> The elements of this crime are:

> First, a peace officer had probable cause to believe that the defendant drove, operated, or was in physical control of a motor vehicle while under the influence of alcohol.
> . . .
> Second, the defendant was involved in a motor vehicle accident resulting in property damage.

> Third, the peace officer requested that the defendant submit to a chemical test of the person's blood or urine as required by a search warrant and informed the defendant that refusal to submit to a blood or urine test is a crime.

> *Fourth, the defendant refused to submit to the test.*

> Fifth, the defendant's act took place on or about October 4, 2021, in Anoka County.

> If you find that each of these elements has been proven beyond a reasonable doubt, the defendant is guilty. If you find that any element has not been proven beyond a reasonable doubt, the defendant is not guilty.

4

(emphasis added). The district court also instructed the jury that if it did not define a word or phrase in the jury instructions, the jury "should apply the common ordinary meaning of that word or phrase."

The jury found Schmeichel guilty of test refusal but not guilty of DWI. Schmeichel appealed.[2]

At the court of appeals, Schmeichel argued, in part, that the district court abused its discretion when it declined to give her requested jury instruction on the element of refusal. *State v. Schmeichel*, No. A23-1905, 2024 WL 4260424, at *1 (Minn. App. Sept. 23, 2024). The State argued that the district court did not abuse its discretion by declining to give the instruction, and that even if it did, the failure to do so was harmless. In a nonprecedential decision, the court of appeals affirmed Schmeichel's conviction. *Id*.

The court of appeals held that the district court did not abuse its discretion by failing to give the requested jury instruction because the jury instructions it gave correctly stated the law using language that could easily be understood by the jury. *Id*. at *3. And assuming there was an error, the court of appeals concluded that the error was harmless. *Id*. The

---

[2]    The pattern jury instructions for test refusal were updated within months of Schmeichel's trial to include an explanation of the refusal element, stating "[a] refusal to submit to chemical testing includes any indication of actual unwillingness to complete the testing process, as determined from the driver's words and actions in light of the totality of the circumstances." 10A Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instructions Guides, Criminal*, CRIMJIG 25.09 (7th ed. 2023–2024). The current pattern jury instructions for test refusal contain the same language. 10A Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instructions Guides, Criminal*, CRIMJIG 25.09, 25.09.1 (7th ed. 2025–2026).

court of appeals reasoned that any error was harmless because the State produced significant direct evidence of Schmeichel's test refusal. *Id.*

Schmeichel petitioned for further review of the jury instruction issue. The State filed a response urging us to deny Schmeichel's petition, in part, because there was no error or abuse of discretion in the jury instructions. However, after we granted review, the State changed its position in its brief. The State confirmed its changed position at oral argument and conceded that the district court erred by failing to give Schmeichel's requested jury instruction. Nonetheless, the State continues to argue that the district court's error was harmless.

**ANALYSIS**

Schmeichel argues that the district court committed reversible error when it denied her request to instruct the jury that to prove the test refusal element, the State had to prove that the defendant was actually unwilling to submit to testing. Determining whether reversible error occurred involves two questions. The first question is whether the district court abused its discretion when it denied Schmeichel's requested jury instruction. *See State v. Wenthe*, 865 N.W.2d 293, 302 (Minn. 2015) ("Denial of a requested jury instruction is reviewed for abuse of discretion."). The second question is, if the district court abused its discretion, whether the error was harmless. *See State v. Schoenrock*, 899 N.W.2d 462, 467 (Minn. 2017) ("Even if a jury instruction is erroneous, a defendant is not entitled to a new trial if the error was harmless.").

This case presents an unusual posture; while the appeal was pending, the State changed its position and conceded the question of law regarding the jury instructions, and

6

the parties now agree that the district court abused its discretion in declining to give Schmeichel's requested instruction. Nonetheless, the State continues to argue that the district court's failure to give the requested instruction was harmless. While we generally accept a party's concessions, we need not do so when the party has made a concession on a question of law, particularly when we find fault with the party's analysis on the issue. *See State v. Tibiatowski*, 590 N.W.2d 305, 308–09 (Minn. 1999) (deciding that a suspect was not in custody for purposes of whether a *Miranda* warning should have been given, even though the district court and the court of appeals bypassed the issue based on the parties' stipulation that the suspect was in custody). We therefore decline to accept the State's concession and choose to independently review the issue of whether the district court abused its discretion in denying Schmeichel's requested jury instruction.

A district court's jury instructions are reviewed for an abuse of discretion, with the district court "enjoy[ing] considerable latitude in selecting jury instructions, including the specific language of those instructions." *State v. Peltier*, 874 N.W.2d 792, 797 (Minn. 2016). If the instructions, when read as a whole, "correctly state[] the law in language that can be understood by the jury, there is no reversible error." *State v. Peou*, 579 N.W.2d 471, 475 (Minn. 1998). "[T]he elements of the crime should be explained, but detailed definitions of the elements to the crime need not be given in the jury instructions if the instructions do not mislead the jury or allow it to speculate over the meaning of the elements." *Peterson v. State*, 282 N.W.2d 878, 881 (Minn. 1979); *see State v. Davis*, 864 N.W.2d 171, 177 (Minn. 2015) (holding that the district court did not err when it did not provide a definition of "theft" or "steal" in the jury instructions for burglary).

The statute at issue here provides in pertinent part that "[i]t is a crime for any person to *refuse* to submit to a chemical test: . . . of the person's blood or urine as required by a search warrant . . . ." Minn. Stat. § 169A.20, subd. 2(2) (emphasis added). The district court instructed the jury that, as an element of the crime, the State had to prove beyond a reasonable doubt that "the defendant refused to submit to the test."

Schmeichel argues the district court abused its discretion because it denied her request to also instruct the jury that the State was required to prove beyond a reasonable doubt her actual unwillingness to submit to testing. The phrase "actual unwillingness" does not appear in Minn. Stat. § 169A.20, subd. 2, and Schmeichel does not argue that the statute expressly requires proof of a defendant's actual unwillingness. Instead, Schmeichel's argument rests on the meaning of the word "refuse."[3] According to Schmeichel, the plain meaning of the word "refuse" requires the State to prove the defendant's actual unwillingness to take a test. Because the jury instructions did not include this definition of "refuse," Schmeichel contends that the jury instructions failed to adequately explain the refusal element of the charge.

The question for us is not whether the district court should have defined the word "refuse" but rather whether the given instruction correctly stated the law in language that could be understood by the jury. *See Peou*, 579 N.W.2d at 475. The law makes it a crime

---

[3]   Schmeichel relies on *State v. Ferrier*, 792 N.W.2d 98 (Minn. App. 2010), to support her argument that the district court abused its discretion by denying her requested jury instruction. But as a court of appeals decision, *Ferrier* is not binding on us. In addition, *Ferrier* did not involve a jury instruction issue. Instead, *Ferrier* was a sufficiency of the evidence case in which the court of appeals held a driver can refuse to submit to a chemical test without verbally refusing the test. *Id.* at 100–01.

to "refuse to submit to a chemical test." *See* Minn. Stat. § 169A.20, subd. 2. The district court instructed the jury that Schmeichel was guilty of the crime if the State proved beyond a reasonable doubt, among other elements, that she "refused to submit to the test." Although the district court did not define "refuse," its instruction correctly stated the law in language that could be understood by the jury. *See Peterson*, 282 N.W.2d at 881 (concluding that the failure to define a phrase in the jury instructions was not error because "the commonly understood meaning of [the phrase] was sufficient to convey the essentials of the element to the jury"). The district court did not need to further define "refuse" because to do so would simply replace one common understandable term with another. *See State v. Moore*, 10 N.W.3d 676, 682 (Minn. 2024) (declining to further define "immediate" for the same reason). Whether a defendant "refused" is a fact question, and we therefore leave it to the fact-finders to apply that term to the specific circumstances of future cases. *See id*.

Accordingly, we hold that when a district court instructs a jury in a test refusal case that the State must prove the defendant refused to submit to the test, the district court does not abuse its discretion in denying the defendant's request to also instruct the jury that the State must prove the defendant's actual unwillingness to submit to chemical testing.

**CONCLUSION**

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.

9